# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| KELLY ANN ALLEN, <br><br>             Plaintiff, <br><br>     v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br>             Defendant. | Case No. ED CV 13-01366 (SH) <br><br> MEMORANDUM DECISION AND ORDER |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Brief with Points and Authorities in Support of Plaintiff's Complaint ["Plaintiff's Brief"];

Defendant's Brief); and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

On October 13, 2009, plaintiff Kelly Ann Allen filed an application for a period of disability or Disability Insurance Benefits, alleging an inability to work since November 27, 2008 due to lower back pain and right and left knee pain. (See Administrative Record ["AR"] 123-25, 143-44). On December 16, 2011 (following a hearing on October 11, 2011, see AR 24-54), an Administrative Law Judge ("ALJ") issued a decision. The ALJ determined that plaintiff had severe impairments -- "status post lumbar fusion; bilateral patellofemoral dysfunction and right shoulder impingement syndrome" -- but found that plaintiff was not disabled within the meaning of the Social Security Act. (See AR 10-18).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see AR 1-3), plaintiff filed this action in this Court.

Plaintiff makes two challenges to the 2012 Decision. Plaintiff alleges the ALJ erred in (1) failing to properly consider plaintiff's testimony and make proper credibility findings, and (2) failing to properly consider lay witness testimony.

## DISCUSSION

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding not fully credible plaintiff's testimony about her functional limitations and her

excess pain.[1] Defendant argues that the ALJ reasonably discounted plaintiff's allegations of physical dysfunction and significant pain.

In a Disability Report, plaintiff complained of lower back pain and right and left knee pain. Plaintiff stated she could not stand, sit or walk for any period of time, and she could not lift, stoop or bend. (See AR 143-44).

In a Function Report, dated October 27, 2009, plaintiff stated her daily activities consisted of showering, making breakfast for her children when able to, feeding the pets (with the help of her two children), helping out at school (classroom, P.T.A.) for an hour or so when able to, trying to do chores (dishes, laundry), picking up dinner from a store, picking up her children at school, making dinner when able to, and watching television. She cleaned the dishes, did laundry (but rarely completed it), and wiped countertops a couple of times a week. She drove a car daily and went shopping for groceries and household items four times a week. She engaged in social activities, including watching sports on television and going out to dinner one to two times a month, talking on the computer twice a week, and going to Church once a week. She stated she can not clean the house and had difficulty putting on socks and shoes, shaving her legs and clipping her toenails. She claimed she could lift only 15 pounds, could walk for only 10 minutes, and could stand, kneel, bend, squat, reach, sit and climb stairs for only 10 to 15 minutes. She stated had been prescribed orthotics and wore a brace. (See AR 152-59).

At the administrative hearing, plaintiff testified that she had worked at Vons, primarily as a supervisor (bakery, deli). Vons attempted to accommodate her by

---

[1] The Residual Functional Capacity ("RFC") is the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a).
The ALJ found that plaintiff had the RFC to light work, as follows: plaintiff plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; plaintiff can stand and/or walk for 6 hours out of an 8-hour workday; plaintiff can sit for 6 hours out of an 8-hour workday; plaintiff can occasionally push and/or pull with the left upper extremity; plaintiff can occasionally reach overhead with the right upper extremity; and plaintiff has occasional postural limitations but is precluded from climbing ladders, ropes and scaffolds. (See AR 14-17).

changing her job duties -- hanging tags with the use of a chair with wheels, serving as a checker with the use of a special stool -- but she was not able to do them because sitting for long periods caused her too much pain. She earned a little money when she tried to go back to work in 2009 and 2010. Pain was the main reason she was not able to work. (See AR 29-31).

Plaintiff testified that she sees her orthopedist (Dr. Shaw) every month or two and last saw him two months earlier, but only for her left knee (and not for back or right knee which were injured in a car accident in 2001). She was in the process of finding an orthopedist who would also treat her for her back and right knee pain. Dr. Shaw did not want her to lift, bend, stoop, kneel, jump or stand (she was not aware of any limitation regarding how long she could stand). She has had three surgeries on her right knee, and one back surgery, a L4-L5 disc fusion, which relieved the pain a little. She was not prescribed a cane. Cortisone shots did not relieve the back pain. Physical therapy and pain management were not helpful. She had not worn the brace for a couple of years, and she did not still wear orthotics because they were making it worse. (See AR 31-37).

Plaintiff testified that every day she has a sharp and stabbing pain all day long in her lower back and both knees. The pain radiates to her hips and down her legs. Standing, walking, bending, sitting, kneeling and squatting all made her pain worse. For pain she takes Motrin and Vicodin as needed (she tries not to take them too often) and uses medical marijuana (prescribed by Dr. Patel). Both the Motrin and marijuana (which she ingests while eating food) relieve the pain, and she does not suffer any side effects. An Epsom salt bath helps but does not relieve the pain, and elevating her legs relieves her back pain. She has trouble going to sleep and waking up; she sleeps only six hours before taking her children to school, and then goes home and sleeps another three or four hours. She does not take antidepressants (she last took one a year and a half ago and it was not effective). (See AR 32-33, 37-40, 45-46).

4

Plaintiff testified she had received treatment (a cortisone injection) for her shoulders about two years earlier, but no longer had any problems except for when they ache a little on a cold day. She was able to reach overhead. (See AR 40-41).

Plaintiff testified she can sit for about 15 to 20 minutes before having to change positions, that she can stand about 30 minutes and walk about half a block before having to sit, that she can lift about 10 pounds, that she cannot crawl, kneel, and bend. (See AR 43-45).

Plaintiff testified she lives in a house with her husband and two children. She drives her children to school a quarter-mile away every day, but cannot drive long distances because it is hard for her to sit and hurts her back (she drives with her left fine to minimize the pain). She drove herself to the hearing. She is able to dress, bathe and feed herself. She goes grocery shopping for a small number of items, sometimes using a motorized cart (the children put the items away), and her entire family goes shopping when there is a larger number of items involved. She occasionally cooks. Her husband and children do most of the household cleaning and laundry. Her husband, when employed, pays the bills. Her husband and children take care of their dog, three cats and two fish. She does not go to church, and has not done volunteer work at her children's school for a couple of years. Based on her doctor's advice to strengthen her knees, she goes to Muay Thai, which is like kickboxing, where she sits in a chair with weights on her legs and lifts them up and where she does crunches (she had not done crunches in a while). Since the crunches bother her back and knees, her doctor recommended that she try water aerobics (she had not started). (See AR 27-29, 46-50).

The ALJ addressed the credibility of plaintiff's testimony as follows:

> Despite alleging mobility difficulties, the claimant admitted and testified she prepared simple meals, washed laundry, drove, ate out for dinner, spent time on the computer, paid bills and banks, attended church, took care of her children, took care of her pets, cooked, performed household chores and took care of her own

personal hygiene. The claimant's admission to be able to perform these functions of daily living undermined her allegations of an inability to walk and difficulty with bending, standing, reaching or sitting (Exhibit 3E/2 and Exhibit 4E/6).

In a function report, the claimant alleged she has chronic back, leg and knee pain. She indicated she can only walk for 10 to 15 minutes at a time and cannot sit long (Exhibit 4E). However, these subjective complaints are not corroborated by the claimant's own activities and actions. The claimant stated she volunteered at her child's school for a minimum of an hour at a time, which required walking, and sitting for more than 15 minutes. Then, in the same report, she alleged difficulty with bending, kneeling and stooping; however, she admitted engaging in leg exercises and crunches regularly. She added that these exercises are very effective for pain relief. The claimant stated and testified that she required prescribed orthotics to help her ambulate (Exhibit 4E). However, the claimant admitted at the hearing she was not presently wearing her orthotics. This demonstrated that the claimant's symptoms may not be as severe as she has alleged. Further, she alleged her chronic back, leg and knee pain were so debilitating that she cannot work (Id). Yet, the claimant visited her treating physician on September 14, 2009, and requested a release to return to work (Exhibit 6F/6). The claimant's request for a work release, in light of the other factors as outlined above, further diminishes her allegations that she was not able to work.

The claimant takes medical marijuana, Vicodin and over-the-counter medication such as Motrin for her complaints of pain. However, she acknowledged the medical marijuana is easily ingested in food, does not cause side effects and very effective in relieving her pain. She also admitted her other medication has been relatively effective in controlling her symptoms with no side effects.

> I have analyzed the credibility of the claimant's allegations pursuant to SSR 96-7p, and have found that they are not fully credible. Despite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities undermined the credibility of the claimant's allegations of disabling functional limitations. (AR 15-16).

After rejecting the testimony of plaintiff's husband, the ALJ concluded: "After careful consideration of the evidence, I have find [sic] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 16).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain. Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). "[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion." Bunnell v. Sullivan, supra.

Here, substantial evidence does not support the ALJ's finding that plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was only partially credible. None of the reasons given by the ALJ provided a sufficient basis for partially rejecting plaintiff's testimony.[2]

The first reason given by the ALJ -- plaintiff's ability to perform daily activities such as preparing simple meals, washing laundry, driving, eating dinner out, spending time on the computer, paying bills, attending church, taking care of her children and pets, cooking, performing household chores, and taking care of her personal hygiene -- did not support the ALJ's credibility finding. Such activities are not inconsistent with plaintiff's ability to perform full-time work. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987).

Although inconsistencies in a claimant's testimony or between a claimant's testimony and conduct may provide a basis to discredit a claimant's testimony, see Smolen v. Chater, supra, 158 F.3d at 1273; Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002), the inconsistencies in plaintiff's testimony and statements and/or between plaintiff's testimony and conduct were minor or nonexistent. Plaintiff did state in the Function Report that she could only walk for 10 to 15 minutes at a time and could not sit for long, and that she "might help out at school for an hour or so. I help the PTA when I

---

[2] The Court will not consider reasons for finding plaintiff not fully credible (i.e., plaintiff's exercise to strengthen her knees; in 2009, plaintiff's treating physician endorsed no work restrictions and said it was permitted for plaintiff to return to work; lack of objective medical evidence) but were not given by the ALJ in the Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

do" (see AR 152, 157). However, contrary to the ALJ's assertion, there is nothing in the record showing that plaintiff's volunteering activities required her to walk and sit more than 15 minutes.

Moreover, while plaintiff in the Function Report did state she had difficulty with bending, kneeling and stooping (see AR 157), she did not testify to engaging in leg exercises and crunches regularly, contrary to the ALJ's assertion. Indeed, at the hearing the ALJ did not ask plaintiff how often she did leg exercises and crunches, and plaintiff even testified that it had been a while since she had done crunches (see AR 49).

Moreover, contrary to the ALJ's assertion, plaintiff's testimony at the October 2011 hearing that she was not wearing her orthotics (see AR 36) was not inconsistent with her statement in the October 2009 Function Report that she had been prescribed orthotics (see AR 158). Two years had passed since plaintiff had completed the Function Report, and at the hearing plaintiff provided an explanation as to why she still was not wearing orthotics (see AR 36). Moreover, contrary to the ALJ's assertion, plaintiff's September 14, 2009 request to her treating physician for a work release (see AR 238) was not necessarily inconsistent with her testimony about her ability to work. At the hearing, the ALJ did not ask plaintiff about her request for a work release, and plaintiff testified that she had attempted to go back to work after 2008, but was not able to continue working because of pain (see AR 26, 29-30).

While a claimant's taking of medication to control pain and without side effects is a valid reason for discrediting a claimant's testimony about the extent of symptoms and pain, see Warre v. Commissioner of Social Sec. Admin, 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for purpose of determining eligibility for SSI benefits."); 20 C.F.R. § 404.1529(c)(3)(iv) (An ALJ may consider, among other things, the effectiveness and side effects of any medication a claimant takes or has taken in evaluating the intensity and persistence of symptoms, such as pain, and in determining the extent to which symptoms limits a

9

claimant's capacity for work), it is not clear that the ALJ specifically relied on plaintiff's testimony about Motrin, Vicodin and medical marijuana to partially reject plaintiff's testimony. In any event, although plaintiff did testify that Motrin and marijuana relieve her pain without side effects (see AR 32-33), at the hearing the ALJ did not ask plaintiff how long such medications relieved her pain, and plaintiff testified that she suffered sharp and stabbing pain every day all day long (see AR 38-39).

Since the ALJ failed to provide clear and convincing reasons for partially rejecting plaintiff's testimony, this case should be remanded. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

**ISSUE NO. 2:**

Plaintiff contends that the ALJ did not properly consider the testimony of the lay witness. In response, defendant argues that the ALJ provided germane reasons for rejecting the lay witness statements.

Here, plaintiff's husband, David Allen Jr., submitted a Function Report - Adult - Third Party. (See AR 160-67). To properly reject lay testimony, the ALJ must give a reason germane to the witness for doing so. Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Smolen v. Chater, supra, 80 F.3d at 1288-89.

To the extent that the ALJ rejected plaintiff's husband's testimony, in part because he had a "financial interest" in plaintiff's case and therefore was biased (see AR 16), the ALJ's reason was not proper. Plaintiff's husband was an appropriate person to provide lay witness testimony about plaintiff's activities and symptoms. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)("[D]escriptions by friends and family members in a position to observe [plaintiff's] symptoms and daily activities have routinely been treated as competent evidence."). Moreover, to the extent that the ALJ rejected plaintiff's husband's testimony, in part, because his testimony "mirrors the claimant's allegations"

(see AR 16), the ALJ's reason was not proper since, as discussed above, the ALJ did not properly reject plaintiff's testimony.

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed and remanded for further proceedings, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED:  April 1, 2014

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE